ACCEPTED
13-15-00127-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/10/2015 12:04:30 PM
CECILE FOY GSANGER
CLERK

# No. 13-15-00127-CV

## IN THE COURT OF APPEALS FOR THE THIRTEENTH JUDICIAL DISTRICT CORPUS CHRISTI & EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/10/2015 12:04:30 PM
CECILE FOY GSANGER
Clerk

---

### TOM TUCKER, CROSS-APPELLEE
### V.
### CARL BEDGOOD & LAURA BEDGOOD, CROSS- APPELLANTS

---

## On Appeal from the County Court at Law No. 1 of Victoria County, Texas

---

### FIRST AMENDED BRIEF OF CROSS-APPELLANTS

---

Carl Bedgood and Laura Bedgood, Cross-Appellants

Rachel F. Klotzman
State Bar No. 24049710
Klotzman Law Firm, PLLC
603 E. Mesquite Lane
Victoria, TX 77901
Tel.: 361 485-9312
Fax: 361 237-3591
Attorney for Carl Bedgood and Laura Bedgood

## ORAL ARGUMENT IS NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

PARTIES                          COUNSEL

**Plaintiff:**
Tom Tucker                       Hon. Robert P. Houston
                                 30 Meadow View
                                 Victoria, TX 77904

**Defendants:**
Carl Bedgood                     Hon. Amanda B. Pierce
                                 603 E. Mesquite Ln.
                                 Victoria, TX 77901

                                 Hon. Rachel F. Klotzman
                                 603 E. Mesquite Ln.
                                 Victoria, TX 77901

Laura Bedgood                    Hon. Amanda B. Pierce
                                 603 E. Mesquite Ln.
                                 Victoria, TX 77901

                                 Hon. Rachel F. Klotzman
                                 603 E. Mesquite Ln.
                                 Victoria, TX 77901

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................. ii

INDEX OF AUTHORITIES ............................................................................... iv

STATEMENT OF THE CASE ............................................................................ 1

ISSUES PRESENTED ...................................................................................... 2

STATEMENT OF THE FACTS .......................................................................... 2

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT AND AUTHORITIES .................................................................... 4

    I. Appellate Issues and Standard of Review ........................................... 4

    II. Attorney's Fees Properly Pled ........................................................... 5

    III. Prevailing Party Provision Applicable to Tucker ............................... 7

    IV. Legal Proceeding Related to Earnest Money Contract ..................... 10

PRAYER ...................................................................................................... 12

CERTIFICATE OF SERVICE .......................................................................... 13

CERTIFICATE OF COMPLIANCE .................................................................. 14

APPENDIX .................................................................................................. 15

# INDEX OF AUTHORITIES

## *Texas Court of Appeals*

*Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624

(Tex. App.—San Antonio 2011, no pet.)........................................................5, 9, 10

*Lesieur v. Fryar*, 325 S.W.3d 242

(Tex. App.—San Antonio 2010, pet. denied) ...................................................7, 8, 9

*Rich v. Olah*, 274 S.W.3d 878

(Tex. App.—Dallas 2008, no pet.)............................................................. 10


## *Texas Rules of Civil Procedure*

Tex. R. Civ. P. 67...................................................................................5

Tex. R. Civ. P. 301.................................................................................5

To the Honorable Thirteenth Court of Appeals:

## STATEMENT OF THE CASE

This was an action for damages for 1) breach of contract, 2) breach of fiduciary duty and common law fraud, 3) statutory fraud, 4) unjust enrichment and 5) civil conspiracy brought by Tom Tucker (hereinafter "Tucker"), cross-appellee, against Carl Bedgood and Laura Bedgood (hereinafter "the Bedgoods"), cross-appellants, in a Texas county court at law (I Suppl. at 421). The Bedgoods filed motions for summary judgment, both traditional and no evidence (I Suppl. at 255-256), and the court granted summary judgment in their favor on February 23, 2015, finding no genuine issue of material fact and that the Bedgoods were entitled to judgment as a matter of law (I Suppl. at 448). Attorney's fees were not awarded (I Suppl. at 448). The trial court denied Tucker's motion for reconsideration on March 12, 2015 (I Suppl. at 453), and Tucker timely perfected his appeal on March 23, 2015 (I Suppl. at 454). The trial court also denied the Bedgoods' motion to reform judgment and take judicial notice filed on March 24, 2015 (I Suppl. at 456, 481). The Bedgoods timely perfected their cross-appeal regarding the single issue of attorney's fees on April 20, 2015 (I Suppl. at 482).

## ISSUE PRESENTED

Under the earnest money contract's prevailing party provision did the trial court err in denying the Bedgoods' requests for an award of attorney's fees when summary judgment was granted in favor of the Bedgoods, the earnest money contract states that "the prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party", Tucker was the listing broker representing the Bedgoods and a beneficiary under the contract and Tucker's suit is a legal proceeding stemming from said earnest money contract?

## STATEMENT OF FACTS

Tucker sued the Bedgoods in a county court at law for 1) breach of contract, 2) breach of fiduciary duty and common law fraud, 3) statutory fraud, 4) unjust enrichment and 5) civil conspiracy under a 2006 unimproved property contract (hereinafter "earnest money contract") wherein the Bedgoods sold land to a third party and Tucker was the listing broker (I Suppl. at 296-309, 421). The Bedgoods were granted summary judgment without an award for attorney's fees (I Suppl. at 448). The earnest money contract (I Suppl. at 296) states, regarding attorney's fees, that "[t]he prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party" (I Suppl. at 300). In the motions hearing held on February 18, 2015,

2

the Bedgoods' attorney discussed this section of the earnest money contract (II R.R. at 3,5). The Bedgoods' attorney also attached an affidavit in support of the motion for summary judgment stating that $12,000.00 represented a reasonable fee for her services (I Suppl. at 392). Following the granting of summary judgment in favor of the Bedgoods and the denial of attorney's fees, the Bedgoods filed a motion to reform judgment requesting that the trial court have a hearing to determine attorney's fees, citing the prevailing party provision of the earnest money contract, and requested that the court take judicial notice of the contents of its file and of the usual and customary attorney's fees necessary for the prosecution of an appeal (I Suppl. at 456-457). Tucker filed a response to the Bedgoods' motion alleging movants failed to properly plead for attorney's fees under the prevailing party prevision (I Suppl. at 476). Alternatively, Tucker states that he did not sue the Bedgoods under or pursuant to the earnest money contract, but rather on the basis of an oral agreement between the parties and that the earnest money contract was simply "some evidence of what the agreement between Tucker and Bedgood was sufficient to satisfy the statute of frauds" (I Suppl. at 478). The Bedgoods' requests were denied and this cross-appeal ensued regarding only the issue of attorney's fees (I Suppl. at 481).

## SUMMARY OF THE ARGUMENT

This suit arises from an alleged oral agreement incident to an earnest money contract wherein the Bedgoods and Tucker sold land to a third party buyer and Tucker both represented the Bedgoods as realtor and was a direct beneficiary under the contract. As either a party to the sale or a third party beneficiary under the earnest money contract, Tucker is obligated to pay attorney's fees to the Bedgoods as the prevailing party in his suit related to said contract. The court erred in denying said relief.

## ARGUMENT AND AUTHORITIES

I.     Appellate Issues and Standard of Review

This is a single issue cross-appeal regarding the trial court's failure to award mandatory attorney's fees pursuant to an earnest money contract. Said contract states that "[t]he prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party" (I Suppl. at 300). The appellate issues include 1) whether the request for attorney's fees was properly pled, 2) whether the prevailing party provision in the earnest money contract applied to Tucker and 3) whether this lawsuit was a legal proceeding related to the earnest money contract. An abuse of discretion standard of review applies to a trial court's award of attorney's fees, however, when attorney's fees are proper and denied by the trial court, the issue is to be reviewed

4

de novo. *Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 627 (Tex. App.—San Antonio 2011, no pet.)("An issue concerning the availability of attorney's fees under a statute or a contract presents a question of law that appellate courts review de novo."). For the reasons detailed below, the Bedgoods request that this Court reverse the portion of the judgment denying attorney's fees and remand the issue of reasonable fees to the trial court.

II.     Attorney's Fees Properly Pled

Tucker asserts in answer to the Bedgoods' motion to reform judgment that the Bedgoods failed to request summary judgment and did not properly plead attorney's fees stemming from the earnest money contract (I Suppl. at 475). The court may award attorney's fees if they are pled or the issue was waived or tried by consent. *See* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity."); Tex. R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). In the Bedgoods' summary judgment motion they requested that "movant be granted summary judgment in the amount of $12,000.00 for attorney's fees as proven herein; or alternatively, the Court set a hearing on the matter of attorney's fees, to be held immediately following the summary judgment on this

5

cause, and after the hearing Movant be granted an order setting the amount of attorney's fees to be awarded" (I Suppl. at 273). Amanda Pierce (hereinafter "Pierce"), the Bedgoods' attorney, also attached as exhibits to the summary judgment motion the earnest money contract and her own affidavit that stated "considering the nature of this case, the amount of money involved, and the time and skills required of Movant's attorneys, I am of the opinion that $12,000.00 represents a reasonable fee for the services of Amanda Pierce in conjunction with this case" (I Suppl. at 392). During the summary judgment hearing held on February 18, 2015, Pierce specifically requested recovery of attorney's fees stemming from the prevailing party provision of the earnest money contract (II R.R. at 3,5). At said hearing, Robert Houston (hereinafter "Houston"), Tucker's counsel, stated "I think it's interesting, you know, they sued for attorney fees and they didn't ask for attorney fees globally" (II R.R. at 29). Following the granting of summary judgment in favor of the Bedgoods and the denial of attorney's fees, the Bedgoods requested that the trial court have a hearing to determine attorney's fees citing the prevailing party provision of the earnest money contract (I Suppl. at 456).

The Bedgoods assert that the evidence above shows that both a "global" request for attorney's fees as well as a specific request for fees under the earnest money contract were pled. Furthermore, Houston failed to object to Pierce's argument regarding attorney's fees under the earnest money contract, rather, he

6

argues that she was engaging in "double talk" by both denying that the earnest money contract was a contract between the Bedgoods and Tucker while relying on the earnest money contract for attorney's fees (II R.R. at 32). The Bedgoods not only requested summary judgment regarding attorney's fees, but brought the issue to the court's attention during the summary judgment hearing and again with the post judgment motion to reform. Therefore, the issue of attorney's fees was both pled and preserved for appeal.

III.    Prevailing Party Provision Applicable to Tucker

It is undisputed that the Bedgoods are the prevailing party in this proceeding as the court granted summary judgment in their favor. What is at issue is whether the prevailing party provision of the earnest money contract applies to Tucker. The earnest money contract between the Bedgoods and the third party buyer states, on the first page, "PARTIES: Carl Bedgood, and wife Laura Bedgood (Seller) agree[ ] to sell and convey to J P Bryan (Buyer) and Buyer agrees to buy from Seller the property described below[,]" and later "ATTORNEY'S FEES: the prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party" (I Suppl. at 296, 300).

In *Lesieur v. Fryar*, 325 S.W.3d 242, 243 (Tex. App.—San Antonio 2010, pet. denied), a buyer sued both the seller and the seller's real estate agent for claims

arising from a home sale; the trial court granted summary judgment in favor of defendants and also granted attorney's fees to the real estate agent under the prevailing party provision of the earnest money contract. The San Antonio Court of Appeals found that that the trial court erred in granting attorney's fees to the real estate agent finding that the said agent was not a party or third-party beneficiary to the earnest money contract. *Id*. at 253. The court found that "parties" in the earnest money contract with identical boilerplate language to that the subject of this suit are limited to only the buyer and seller. *Id*. at 252. The realtor in *Lesieur* benefitted from the contract only in that she was entitled to brokers' fees from the sale of the property, "an incidental benefit flowing from the contract, which . . . was insufficient to confer third-party beneficiary status." *Id*. at 253. The parties to a contract must intend to confer a direct benefit upon the alleged third party beneficiary in order for the party to enforce the contract. *Id*. at 252-53.

The case before the court is clearly distinguishable from the fact pattern in *Lesieur*. Tucker is not listed in the earnest money contract as a seller (I Suppl. at 296), he is, however, the realtor in the transaction and the owner of Lot 10, which is referenced in the special provisions section; "Lot A-9 will be enlarged to 70 feet by decreasing Lots 10 and 11 by five feet each" (I Suppl. at 299). Tucker received two payments for this transaction. His first payment was a four-thousand dollar ($4,000) commission for his services as a realtor (I Suppl. at 191). Tucker also received a

8

twenty-five thousand dollar payment ($25,000) for sale of the five feet he owned in Lot 10 pursuant to the special provisions section of this earnest money contract (I Suppl. at 190-192). Unlike the broker in *Lesieur*, Tucker received more than a commission from the sale of the property; he directly benefitted from the earnest money contract by selling five feet of land he owned and receiving money as consideration for said sale. *Cf. Lesieur*, 325 S.W.3d at 253 (". . . there was no intent the realtors directly benefit from the contract; rather, there was a separate agreement for their benefit."). It is the Bedgoods' position that, for the purposes of interpreting the prevailing party provision, Tucker was both a party under the earnest money contract and a third party beneficiary as he was conferred a direct benefit of $25,000 from the sale.

The San Antonio Court of Appeals finds in *Fitzgerald* that the prevailing party under an earnest money contract, be that the plaintiff or defendant, is entitled to attorney's fees and that the trial court erred in refusing to award attorney's fees to sellers and their real estate agent who successfully defended claims arising from a similar earnest money contract. 345 S.W.3d at 630-31. In *Fitzgerald*, the earnest money contract's prevailing party provision eliminates the question as to whether the real estate agent is a party by specifically listing the agent in the prevailing party provision. *Id.* at 630 ("if buyer, seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract. . .").

Having found that the language of the contract defined the sellers and real estate agent as parties, the court found that the prevailing party could be either the plaintiff or defendant in the litigation. *Id*. at 630.

The Bedgoods assert that like the sellers in Fitzgerald, they are entitled to attorney's fees as the prevailing party. Tucker is suing the Bedgoods under the guise of an oral contract supported by the written earnest money contract alleging that he was damaged by not receiving an oral benefit, namely 5 feet of lot A-11, promised him from this transaction (I Suppl. at 192). Tucker, separate and apart from his $4,000 commission as realtor, received $25,000 as the seller of 5 feet of lot A-10. By this lawsuit Tucker places himself in the role of third party beneficiary, whether we agree that he is or not, one cannot sue to enforce a contract as a party or third party beneficiary and at the same time deny that the contract provisions regarding mandatory attorney's fees apply. Tucker is either a party or third party beneficiary in the earnest money contract for the purposes of his lawsuit against the Bedgoods and therefore cannot escape the arm of the prevailing party provision. Therefore, the trial court erred in denying the Bedgood's request for attorney's fees based on said provision.

IV.   Legal Proceeding Related to Earnest Money Contract

This case is a legal proceeding related to the earnest money contract. In *Rich v. Olah*, 274 S.W.3d 878, 888 (Tex. App.—Dallas 2008, no pet.), the trial court

denied the prevailing party's request for attorney's fees by narrowly construing the language "related to this contract". The appellate court emphasized the word *related* in their analysis concluding that "although based in tort and statutory causes of action, the litigated claims all relate to the sales contract." *Id*. Tucker filed this lawsuit, which is by definition a legal proceeding, and this lawsuit stems from the earnest money contract. According to Tucker's affidavit filed with the court, this lawsuit against the Bedgoods arises from a sale of land from the Bedgoods to a third party in which Tucker acted as realtor and beneficiary (I Suppl. at 191). The earnest money contract was drafted by Tucker and presented to Bedgood and Tucker also states in the same affidavit that he received $25,000 from the transaction for the portion of the property he sold in this transaction (I Suppl. at 191). Furthermore, Tucker's counsel points to said earnest money contract as the only written instrument giving rise to Tucker's claims against Bedgood (I Suppl. at 434)("The Bedgoods contend that Tucker has offered no evidence of a written contract. However, he has offered, as have the Bedgoods, the written earnest money contract signed by the Bedgoods, which contains the Bedgoods' agreement to reduce the size of Lot A-ll and A-10 and to increase the size of Lot A-9."). The Bedgoods asserted and the trial court agreed that Tucker's claims were unfounded in law and fact, granting summary judgment to the Bedgoods, but unfounded claims in a lawsuit brought under a contract do not make the prevailing party portion of the contract invalid. For

11

clarification, the Bedgoods' position is not that the earnest money contract was a valid contract between the parties, but rather, the fact that Tucker sued the Bedgoods using the earnest money contract as the only written proof of an alleged oral agreement means that Tucker cannot deny that he is a party to the earnest money contract. This is, on its face, a legal proceeding related to the earnest money contract.

## PRAYER

For these reasons, the Bedgoods, Cross-Appellants, request that this court grant the Bedgoods' request for attorney's fees, reverse the portion of the trial court's judgment refusing to award attorney's fees, render judgment that the Bedgoods recover reasonable attorneys' fees from Tucker and remand to the trial court for determination of reasonable fees. The Bedgoods also request any other relief to which they may be entitled.

Respectfully submitted,

KLOTZMAN LAW FIRM, PLLC
603 E. Mesquite Ln.
Victoria, TX 77901
Tel: (361) 485-9312
Fax: (361) 237-3591


By: *Rachel F. Klotzman*
_____
Rachel F. Klotzman
State Bar No. 24049710
Attorney for Appellant


## CERTIFICATE OF SERVICE

This certifies that the undersigned served this First Amended Brief of Cross-Appellants on Tom Tucker, Cross-Appellee, by sending it to lead counsel for Cross-Appellee, Robert P. Houston, at 30 Meadow View, Victoria, TX 77904, by electronic service by transmission to an electronic filing service provider for service through the state's electronic filing manager on July 10, 2015.


*Rachel F. Klotzman*
_____
Rachel F. Klotzman
Attorney for Cross-Appellants

CERTIFICATE OF COMPLIANCE WITH APPELLATE RULE 9.4(i)

I certify that this document contains 2241 words, as indicated by the word-count function of the computer program used to prepare it, and excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as provided by Appellate Rule 9.4(i).

_____
Rachel F. Klotzman
Attorney for Cross-Appellants

# APPENDIX

## CAUSE NO. CIV1-17046

| | | |
|---|---|---|
| TOM TUCKER | § | IN THE COUNTY COURT |
| | § | |
| v. | § | AT LAW NUMBER 1 |
| | § | |
| ROBERT CARL BEDGOOD | § | VICTORIA COUNTY, TEXAS |

### JUDGMENT

On this the 18th of February, 2015, the Court heard the Defendant's Traditional and No Evidence Motion for Summary Judgment against Plaintiff filed in this cause. Plaintiff appeared by his attorney, Robert P. Houston, and Defendant appeared by his attorney, Amanda Pierce.

The Court has considered the records and files in this matter, the affidavits on file and all other papers and documents filed by the parties, and the oral argument of counsel for the respective parties and the briefs filed by counsel, and finds that there is no genuine issue of material facts and that Defendant is entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that Defendant's Traditional and No Evidence Motion for Summary Judgment against Plaintiff is hereby GRANTED, and that summary judgment be entered in favor of Defendant and against Plaintiff.

IT IS ACCORDINGLY ORDERED, ADJUDGED, AND DECREED, that Defendant recover from Plaintiff judgment for $_____ in reasonable and necessary attorney's fees. All relief not expressly granted herein is denied.

SIGNED this _23_ day of February, 2015.

_10:00_ **FILED** _am_
O'CLOCK

HONORABLE TRAVIS H. ERNST

FEB 23 2015

Heidi Easley
Clerk County Court, Victoria County, Texas
By _____ Deputy

448

## CAUSE NO. CIV1-17046

| | | |
|---|---|---|
| TOM TUCKER | § | IN THE COUNTY COURT |
| | § | |
| v. | § | AT LAW NUMBER 1 |
| | § | |
| ROBERT CARL BEDGOOD | § | VICTORIA COUNTY, TEXAS |

### ORDER

On this the 14th of April, 2015, the Court heard the Defendant's Motion to Reform the Judgment entered by this Court on February 23, 2015 and Motion for Judicial Notice filed in this cause. Plaintiff appeared by his attorney, Robert P. Houston, and Defendant appeared by his attorney, Amanda Pierce.

The Court, after having considered the records in this matter and argument of counsel for the respective parties, ORDERS the following:

1. The Defendant's request for attorney's fees under the provisions of Earnest Money Contract is hereby GRANTED or DENIED.

2. The Defendant's request that the Judgment be reformed to include $12,000.00 in attorney's fees awarded to the Defendant is hereby GRANTED or DENIED.

3. The Defendant's request that the Court to take judicial notice of the contents of its file and of the usual and customary attorney's fees necessary for the prosecution of an appeal because an award of fees on appeal hereby GRANTED or DENIED.

SIGNED this __15__ day of April, 2015.

_____
HONORABLE TRAVIS H. ERNST

**FILED**

2015 APR 15 P 2: 48

COUNTY CLERK
VICTORIA COUNTY, TEXAS

**481**

# UNIMPROVED PROPERTY CONTRACT
### NOTICE:  Not For Use For Condominium Transactions

1. **PARTIES:** Carl Bedgood, and wife Laura Bedgood _____ (Seller)
   agrees to sell and convey to J P Bryan. _____
   _____ (Buyer) and Buyer agrees
   to buy from Seller the property described below.

2. **PROPERTY:** Lot A-9 _____ , Block _____1_____ , La Salle Addition _____
   Addition, City of _____ , _____Calhoun_____ County, Texas, known as
   Lot A-9 Park St. Port O'Connor _____ 77982
   _____ (address/zip code),
   or as described on attached exhibit together with all rights, privileges and appurtenances pertaining thereto, including
   but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association
   memberships (the Property).

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ...................................... $_____27,500.00
   B. Sum of all financing described below .................................................... $_____247,500.00
   C. Sales Price (Sum of A and B) ........................................................... $_____275,000.00

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☒ A. **THIRD PARTY FINANCING:** One or more third party mortgage loans in the total amount of
   $ 247,500.00 _____ . If the Property does not satisfy the lenders' underwriting requirements for the loan(s),
   this contract will terminate and the earnest money will be refunded to Buyer. (Check one box only)
      ☒ (1) This contract is subject to Buyer being approved for the financing described in the attached Third Party
         Financing Condition Addendum.
      ☐ (2) This contract is not subject to Buyer being approved for financing.
   ☐ B. **ASSUMPTION:** The assumption of the unpaid principal balance of one of more promissory notes described in
   the attached TREC Loan Assumption Addendum.
   ☐ C. **SELLER FINANCING:** A promissory note from Buyer to Seller of $ _____ , bearing _____ %
   interest per annum, secured by vendor's and deed of trust liens, and containing the terms and conditions
   described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished,
   Buyer shall furnish Seller with a mortgagee policy of title insurance.

5. **EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit $2,500.00 _____ ,
   as earnest money with _____Bedgood Title Company_____ as escrow agent,
   at _____300 E. Airline, Victoria, TX 77901_____
   (address). Buyer shall deposit additional earnest money of $ N/A _____ with escrow agent within _____
   days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract,
   Buyer will be in default.

6. **TITLE POLICY AND SURVEY:**
   ☒ A. **TITLE POLICY:** Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title
   insurance (Title Policy) issued by _____Bedgood Title Company_____
   (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the
   provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning
   ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 4.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines,

Initialed for identification by Buyer _____ and Seller _____     **01A**     TREC NO. 9-5

(TAR-1607) 1-6-03                Page 1 of 8
ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333   Fax: 361-572-8979    Tom Tucker, Broker        Lot A-9 POC.zf
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

296

encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to mail or hand deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and any lender. (Check one box only)
- ☐ (1) Within _____ days after the effective date of this contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.
- ☒ (2) Within ___20___ days after the effective date of this contract, Buyer, at Buyer's expense, shall obtain a new survey.
- ☐ (3) Within _____ days after the effective date of this contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey. If the survey is not approved by the Title Company or Buyer's lender, a new survey will be obtained at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to the Closing Date.

D. OBJECTIONS : Within __5__ days after Buyer receives the Commitment, Exception Documents and the survey, Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; (ii) any portion of the Property lying in the 100 year flood plain as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: __Single Family Residence__ .
Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:
- (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
- (2) MANDATORY OWNERS' ASSOCIATION MEMBERSHIP: The Property ☒ is ☐ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property.
- (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
- (4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

Initialed for identification by Buyer _____ and Seller _____     01A     TREC NO. 9-5
(TAR-1607) 1-6-03                                                                              Page 2 of 8
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com     Lot A-9 POC.zf
297

(5) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) **UNIMPROVED PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** If the Property is located in a certificated service area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, §13.257, Texas Water Code, requires a notice regarding the cost of providing water or sewer services to the Property. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(7) **TEXAS AGRICULTURAL DEVELOPMENT DISTRICT:** The Property ☐ is ☒ is not located in a Texas Agricultural Development District.

**7. PROPERTY CONDITION:**

A. **INSPECTIONS, ACCESS AND UTILITIES:** Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Seller shall pay for turning on existing utilities.
**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. **ACCEPTANCE OF PROPERTY CONDITION:** Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following: **Bring in fill dirt to raise level of lot to the same as adjoining lots**

C. **COMPLETION OF REPAIRS:** Unless otherwise agreed in writing, Seller shall complete all agreed repairs prior to the Closing Date. All required permits must be obtained, and repairs must be performed by persons who are licensed or otherwise permitted by law to provide such repairs. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete repairs.

D. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

E. **SELLER'S DISCLOSURES:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards or conditions which materially affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before _____ **April 21** _____, **2006** _____, or within 7 days after objections to matters disclosed in the Commitment or by the survey have been cured, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

Initialed for identification by Buyer _____ and Seller _____     **01A**     **TREC NO. 9-5**

(TAR-1607) 1-6-03        Page 3 of 8
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com    Lot A-9 POC.zf

298

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.

C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

D. All covenants, representations and warranties in this contract survive closing.

**10. POSSESSION:** Seller shall deliver possession of the Property to Buyer upon closing and funding.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to this sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

Lot A-9 will be enlarged to 70 feet by decreasing lots 10 and 11 by five feet each.

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ N/a_____ to be applied to Buyer's Expenses.

(2) Expenses payable by Buyer (Buyer's Expenses):

(a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).

(b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos, amortization schedules, one-half of escrow fee; transfer fees for cooperative or association membership for utility services; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee, repair inspection, underwriting fee and wire transfer, expenses incident to any loan, and other expenses payable by Buyer under this contract.

B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.

C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of

Initialed for Identification by Buyer _____ and Seller _____ CB          01A          TREC NO. 9-5

(TAR-1607) 1-6-03          Page 4 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

299

additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any obligations of Seller under Paragraph 7.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☐ will ☒ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

18. **ESCROW:** The escrow agent is not (a) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (b) liable for interest on the earnest money and (c) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties. If one party makes written demand for the earnest money, escrow agent shall give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 30 days after notice to the other party, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money. Escrow agent's notice to the other party will be effective when deposited in the U. S. Mail, postage prepaid, certified mail, return receipt requested, addressed to the other party at such party's address shown below. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default. If any representation of Seller in this contract is untrue on the Closing Date, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer _____ and Seller _____                          01A                  TREC NO. 9-5

(TAR-1607) 1-6-03                                                                                                         Page 5 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

300

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile as follows:

| To Buyer at: | To Seller at: |
|---|---|
| *1221 Lamar, Suite 1175* | 300 E. Airline |
| *Houston, Tx    77010* | Victoria, TX 77901 |
| Telephone: _____ | Telephone: (361) 573-1785 |
| Facsimile: _____ | Facsimile: (361) 575-7581 |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☒ Third Party Financing Condition Addendum

☐ Seller Financing Addendum

☐ Loan Assumption Addendum

☒ Addendum for Property Subject to Mandatory Membership in an Owners' Association

☐ Addendum for Sale of Other Property by Buyer

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☒ Other (list): __Information on Broker Services__

☒ Addendum for Coastal Area Property

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Release of Liability on Assumption of FHA, VA, or Conventional Loan Restoration of Seller's Entitlement for VA Guaranteed Loan

☒ Addendum for Unimproved Property Located in a Certificated Service Area of a Utility Service Provider

☐ Addendum for "Back-Up" Contract

Initialed for Identification by Buyer _____ and Seller _____         01A         TREC NO. 9-5

(TAR-1607) 1-6-03                                                                 Page 6 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com        Lot A-9 POC.zf

301

**23. TERMINATION OPTION:** This paragraph will be a part of this contract ONLY if both blanks are filled in and Buyer has paid the Option Fee. Buyer has paid Seller $ N/A _____ (Option Fee) for the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded, however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. For the purposes of this paragraph, time is of the essence; strict compliance with the time for performance stated herein is required.

**24. CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's
Attorney is: _____

Seller's
Attorney is: Self _____

Telephone: _____

Telephone: _____

Facsimile: _____

Facsimile: _____

EXECUTED the __28th__ day of ____March____, __2006__ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_____
Buyer  P Bryan

_____
Seller Carl Bedgood

_____
Buyer

_____
Seller and wife Laura Bedgood

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC NO. 9-5. This form replaces TREC NO. 9-4.

Initialed for identification by Buyer _____ _____ and Seller _____ _____          01A          TREC NO. 9-5
Page 7 of 8
(TAR-1607) 1-6-03
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

302

## SELLER'S RECEIPT

Receipt of $ N/A _____ (Option Fee) in the form of _____ is acknowledged.

_____
Seller **Carl Bedgood**     Date
       **and wife Laura Bedgood**

## BROKER INFORMATION AND RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

_____     **ERA Realty Group, Inc.** _____
Other Broker          Listing Broker

_____     _____
License No.          Telephone  License No.          Telephone

represents ☐ Buyer only as Buyer's agent          represents ☐ Seller and Buyer as an intermediary
           ☐ Seller as Listing Broker's subagent              ☒ Seller only as Seller's agent

_____          _____
Associate          Listing Associate
                   **Tom Tucker**
                   **(361)572-3333**

_____          _____
Telephone          Telephone
                   **302 E. Airline Victoria, TX 77901**

_____          _____
Broker's Address          Listing Associate's Office Address
                   **(361)572-8979**

_____          _____
Facsimile          Facsimile

                   _____
                   Selling Associate

                   _____
                   Telephone

                   _____
                   Selling Associate's Office Address

                   _____
                   Facsimile

## RECEIPT

Receipt of ☑ Contract and ☑ $ *2,500.00* _____ Earnest Money in the form of *check*
is acknowledged.
Escrow Agent: **Bedgood Title Company**          Date: *3/28/06*

By: _____

**300 E. AIRLINE** _____          Telephone _____
Address
**Victoria**          **TX**          **77901** Facsimile: _____
City          State          Zip

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

303